# Beidelman *against* Foulk.

In an action of ejectment a witness is not incompetent to give evidence to support a title, which he himself had conveyed to the party calling him, by deed of special warranty, although part of the purchase-money remained due to the witness, if it appear also that the defect of title, which was the subject in dispute, was known to the vendee at the time he purchased from the witness.

A parol license to abut a dam against the land of another may be revoked at any time before money is expended or labour performed upon the faith of such license.

A man may acquire a right to abut his dam upon the land of another by an actual possession of it for that purpose for twenty-one years; but no shorter space of time will give a right.

He who purchases land and a water-right from another is bound to look to the title before he buys; for, if the right to dam the water proves to be defective, he will not be considered an innocent purchaser without notice.

ERROR to the common pleas of *Columbia* county.

This was an action of ejectment by Valentine Beidelman against John Foulk for ten acres of land, partly covered with water, and including a water-right. The facts of the case, and the errors assigned, are sufficiently stated in the opinion of the court; which was delivered by

KENNEDY, J.—The first error assigned is an exception to the opinion of the court, admitting the evidence of Lawrence Miller. This evidence was offered by the defendant below, who is also the defendant here, after that he had read in evidence a deed of conveyance, as part of his title to the land in dispute, from Peter Vanetta, the elder, to Lawrence Miller, the father of the witness under whom

the defendant claimed the land. It was admitted, that anterior to the execution of this deed Peter Vanetta was vested with the legal title to the land, and was originally the owner of it; and from him both parties professed to derive their respective claims to it. The deed from Vanetta to Miller appears to have been executed on the 25th of May 1802, a year after the time at which L. Miller, the witness, testified that the conversation took place with his father, in the presence and hearing, as he thinks, of Peter Vanetta; in the course of which his father mentioned his wish to build a mill near the land in question, and pointed out the line of the land which it was understood he had then purchased or agreed to purchase of Vanetta, which line, as the father thought, would afford him a suitable site for the mill of which he spoke. But it is evident, and is established by all the evidence without contradiction, that the land in dispute is not embraced by the boundaries set forth in the deed. The testimony of Lawrence Miller, therefore, went to show that his father had contracted with Vanetta for the purchase of land not included within the deed of conveyance subsequently made to him. The deed, however, must be taken as " the final accomplishment and consummation of all previous stipulations;" Lighty *v.* Shorb, 3 *Penns. Rep.* 450; and, hence, the inevitable conclusion is, that the father finally did not buy the land by the line then shown or pointed out. The deed must be considered as conclusive on this point between the parties to it, and those claiming under them; and cannot be contradicted by parol evidence, except it were to prove, that, either through mistake or fraud, land actually purchased was excluded from it; but the testimony of Lawrence Miller or that of any other witness has not the slightest bearing in this way. In the close of the defendant's offer, however, under which the testimony of Lawrence Miller was admitted, it is true, that the defendant proposes to prove, among other things therein specified, that he, and those under whom he claimed, had had possession, including the premises in question, for nearly thirty years; and that Elias Dietrick, from whom the defendant bought, built the dam thereon in 1814, with Peter Vanetta's assent and assistance. To this part of the offer there was no objection made by the plaintiff; and had the defendant given evidence to this effect first, the other evidence might have been admissible in order to show that such possession was originally obtained by and with the assent of Vanetta. But this was not done ; and upon recurrence to all the evidence given on the trial of the cause, it does not appear that a tittle was given from first to last tending to show that Lawrence Miller, the elder, ever had possession of the land in dispute, or that possession was had of it by any other than Peter Vanetta until after Lawrence Miller, the elder, sold to Elias Dietrick the land embraced *within his deed from Vanetta;* when it appears that in 1814, Dietrick being about to erect the dam, he took possession of it from Vanetta not only against his will and express prohibition, but, when the latter told him he would stop him from

[Beidelman v. Foulk.]

joining his dam to the bank of the creek, he, in reply, let him know that nothing except a force which he could not overcome should prevent him from doing so. As the evidence of Lawrence Miller could not control or extend the operation of the deed from Vanetta to his father, so as to pass land not included in the description of the land conveyed by it, it is therefore clear that it could not be admitted for that purpose. And as evidence of a distinct and different contract for the purchase of other land than that included in the deed, and for the purpose of passing an interest in it, it is equally clear that it could not be received ; because, as evidence of a contract, it was altogether defective ; it did not go to show what the terms of the contract were ; nor that any possession of the land was given and taken under it, nor that any money or other thing of value was paid upon it; and, being by parol, it was wholly insufficient to pass a right to land even had the terms of the contract been distinctly and clearly proved, because contrary to the statute against frauds and perjuries. In every point of view then that can be taken of this evidence we think it was inadmissible, and that the court erred in receiving it.

The second error is also an exception to the opinion of the court, rejecting Peter Vanetta, the son and one of the heirs of Peter Vanetta, the original owner of the land now deceased, who was offered as a witness on behalf of the plaintiff. In 1830, after the death of Peter Vanetta, the elder, Peter Vanetta, the younger, with some of the other heirs of his father, agreed to sell to the plaintiff their respective shares and interests in the tract of land, of which the land in question forms a part, containing about two hundred and ninety-five acres, which descended to them from their ancestor. The plaintiff was married to another of the heirs and claimed a sixth of the land in right of his wife; and in 1831, pursuant to the agreement made with him by those other heirs, he received a deed from them conveying the land to him in fee, describing it by courses and distances, and referring to marks upon the ground so as to include the land in dispute with a covenant of special warranty only. It appeared by the articles of agreement entered into between them for the sale of the land, which were also read in evidence to the court, as well as the deed, that upwards of 900 dollars, part of the purchase-money, were not to be paid by the plaintiff till after the death of the widow of Peter Vanetta, the elder, but the interest thereof was to be paid annually to her, by the plaintiff, during her life, and bonds to be given by him for the payment of the principal to the vendors at her death. It was admitted that she was then living. The court below thought that if the plaintiff failed to recover the land in dispute, he would be entitled to have a deduction made from that part of the purchase-money which remained unpaid; as it would seem to be a loss of so much of the consideration for which the money was agreed to be paid, and under this view, conceiving that Peter Vanetta, the younger, was called as a witness to support

his own interest, they held him incompetent. We, however, are inclined to think, under the circumstances disclosed, that Peter Vanetta will be entitled to demand and recover, on the death of the widow, his full proportion of the money remaining unpaid, without any deduction whatever on this account, notwithstanding the plaintiff should, in the mean time, have failed to recover.　The plaintiff being interested in the land, in right of his wife, before he bought, must have known all about the defendant's claim; he saw him in the possession, as it were; that his dam was abutted upon the bank of the creek, which belonged to the ancestor of his wife and those of whom he was buying; where it had stood and been kept up for many years previously.　The claim of the defendant and his occupation of the ground, being thus visible and known to them all, and the plaintiff buying with his eyes open, seeing the defendant in possession and enjoyment of the privilege, of which he now seeks to deprive him, yet requiring no provision in his contract for a deduction from, or return of any portion of the purchase-money, in case he should be unable to recover the disputed ground from the defendant, but on the contrary, paying two-thirds of the purchase-money in hand, and agreeing positively to pay the remaining third on the death of the widow, which might be on the next day for aught he knew, and during the interim, the interest on it, annually, to her, leads inevitably to the conclusion that he was to pay the whole of the purchase-money, whether the land in dispute was recovered or not.　And this is in accordance with the principle laid down in Furhman *v.* Loudon, 13 *Serg. & Rawle* 386, and affirmed in Lighty *v.* Shorb, 3 *Penns. Rep.* 452, that " when the purchaser is aware of a flaw and provides not against it, he takes the risk of it on himself." And the chief justice, in delivering the opinion of the court in the latter case, most aptly observes, pages 452-3, " he shall be bound to perform his engagement, wherever his knowledge and the state of the facts continue to be the same they were at the time of the conveyance."　Beside, the land in dispute forms but a very insignificant part of the land sold to the plaintiff.　And inasmuch as it appears, from all the circumstances attending the purchase, that it was not to be considered as having any influence upon the amount that was to be paid for the land, we think that Peter Vanetta was a competent witness, and that there was error in rejecting him.

The two remaining errors are exceptions to the charge of the court to the jury on points submitted by the plaintiff's counsel, and seem to present four questions.　First, whether any of the evidence tended to prove either fraud or mistake in drawing the deed from Vanetta to Miller, so as to exclude the land in question, when, according to the contract and agreement of the parties, it ought to have been included.　Second, whether it tended to prove that the dam had been erected under a parol licence never distinctly revoked before the erection thereof. Third, whether from the evidence given, the jury could fairly infer an implied assent on the part of Vanetta

[Beidelman v. Foulk.]

to the building of the dam, or to the continuance of it after it was built, so as to conclude him and those claiming under him from setting up a right against it thereafter.  And, fourth, whether Folk, the defendant, might not, from the evidence, be regarded as an innocent purchaser for a valuable consideration, without notice of Vanetta's claim, if he had any, from the conduct of Vanetta himself.

As to the first question, the court below were of opinion that there was no evidence given tending to show either fraud or mistake, and in this we think they were unquestionably right.   In regard to the second question, however, the court instructed the jury that there was evidence from which they might find, if they thought it sufficient, that Vanetta did grant the right to join the dam to his bank, and to raise the water for the purpose claimed and used by the defendant.   In this we think the court erred by not presenting to the consideration of the jury at the same time, other evidence given in the cause, even by some of the defendant's own witnesses, not attempted to be disproved, nor as much as denied, showing most clearly, that if he ever had granted a license or agreed that the dam should be joined to his bank of the creek, he expressly revoked it, and forbade it to be done, in the most peremptory manner possible, at the very first moment of commencing the work.  Now, supposing that he had given a parol license to abut the dam upon his land, it is certain that he had a right to revoke it, at any time before the expenditure of money was incurred, or work and labour were performed upon the faith of it; because, if granted at all, it was by parol and without consideration.   But I must confess, that by a fair construction of the evidence, taking it all together, I am unable to perceive how it can be made out, that Vanetta ever consented that the dam should be constructed where it was.   And as to his declarations about having sold land to Miller for a mill seat, and having injured his own by it, and that if he had it to do again he would not do so, it amounts to nothing; for, in any thing he said, he could only have had an allusion to the land which he sold and conveyed by his deed to Miller, because there is no evidence of a sale of any other; and it may be true that he thought Miller had a mill seat on the land he so conveyed to him.  In this, however, he may have been mistaken, and if he were, that would not give Miller, or those claiming under him, a right to claim as much more land as would be necessary to make a mill seat.   And it may be, too, that he thought he had injured a mill seat upon the remaining part of the land, which he still retained, by selling and conveying as he did to Miller. And without distorting these declarations, imputed to him by the evidence of Frederick Miller, it is utterly impossible to convert them into a license, or to make them evidence of an agreement on the part of Vanetta, that Miller should ever erect a dam upon any other land than upon that embraced within the deed.   It may be thought by some, perhaps, that a dam would not be constructed by Miller without abutting upon the bank of Vanetta, but this would be

a misapprehension; for, on large streams of water, such as this is said to be, it is not unusual to construct dams extending not more than half way across the stream, and to have water power enough for a mill, with the aid of a reasonable descent in the bed of the stream.

Then, as to the third question, whether the jury, from the evidence, could have fairly inferred that the dam was constructed with the assent of Vanetta. It is admitted that Dietrick erected the dam after he bought of Miller; and the evidence shows, without contradiction, and beyond the possibility of doubt, even by the testimony of one of the defendant's own witnesses, that at the time Dietrick commenced constructing it, Vanetta expressly forbade him, and he, thereupon, gave Vanetta to know, that he intended to extend his dam across the creek, and to abut it upon Vanetta's bank; and when Vanetta intimated that he would stop him, he replied to Vanetta that he must do it, then, by planting his *great gun there*, for join his bank he would. The language or manner of Dietrick here was certainly not very pacific towards Vanetta, and was calculated to impress him, as Dietrick doubtless intended it should, with the idea that he, Deitrick, would not be driven from his purpose, except by a force that he could not overcome. And the determined overawing manner of Dietrick, upon this occasion, may account for Vanetta's not having entered into a contest with him, and trying to prevent him from erecting the dam as he did. But surely it cannot be, that a man is thus to be hectored out of his rights; or that, because he does not repel the assault thus made upon them, or immediately commence his suit to recover them back, when forcibly taken from him, it is to be construed into an assent on his part, to give them up forever. It is true, that if he lies by for the space of twenty-one years after he has been evicted of his land, he may lose his right to it, by the operation of the statute of limitations: but, then, nothing short of that period, without something more ought, or can be considered, sufficient to deprive him of it. But it cannot be pretended that the evidence disclosed any thing *more* in this case, which would render a less period than twenty-one years sufficient to bar the plaintiff of his right. It does not appear that Vanetta was acquainted with the intention of the defendant to buy the land, or that he had any knowledge of his purchase after it was concluded. But the defendant, when he bought, was certainly bound to take care and see that Dietrick had a good title for all he proposed selling to him, or otherwise he might lose, at some future day, what he expected to hold and to enjoy if he bought. The deed of Vanetta to Miller formed a link in the chain of the only title that Dietrick had for what he sold to the defendant; the defendant was bound to know what was in that deed; and he must be considered as knowing, also, that it gave Dietrick no right to abut his dam on Vanetta's side of the creek. Vanetta was living upon his land, on the opposite side of the creek, at the time, and the defendant, seeing that Dietrick had no

[Beidelman v. Foulk.]

title for the land, upon which the dam abutted at Vanetta's side of the creek, ought, unless he were willing to run the risk of paying his money without getting a title, to have called upon Vanetta, and to have known of him whether he had any claim to the land or not; and if he had, to have inquired upon what terms he was willing to relinquish it. It was certainly gross negligence in him not to do so, and the law, therefore, imputes to him a full and complete knowledge of all the circumstances under which Dietrick built his dam: and cannot view him in any other light than it would Dietrick, himself, were he the defendant. And as there is no ground for saying that he ever relinquished his right to Dietrick by his assent, there seems to be none for alleging that he ever did so to the defendant.

Now, as to the fourth question, it has been measurably, if not wholly, answered by what has been said in answer to the third. No man can be considered an innocent purchaser, who buys with a full knowledge of all the facts and circumstances connected with the subject of his purchase and the want of title to it on the part of the seller. And although, in point of fact, the defendant, at the time of his purchase, may not have known, yet it has been shown, that if he had used even ordinary caution, and exercised that discretion which every one is bound to do in the purchase of real estate, he might, upon inquiry, have known all that it was necessary for him to know in order to have guarded against the claim of the plaintiff. It must be taken for granted that he saw and examined, before he bought, the title of Dietrick, which, as it did not include the land in dispute, was sufficient to put him on his inquiry, which would necessarily have led him to a knowledge of all the circumstances which attended the erection of the dam, and that it was abutted upon the land of Vanetta under whom the plaintiff claims, against his consent. It being, then, his own fault if he did not know, full knowledge must be imputed to him, and he must be regarded as a purchaser, with full notice. And " such a purchaser," says the chief justice, in delivering the opinion of the court in Alexander *v.* Kerr, 2 *Rawle* 89, " voluntarily, and with full knowledge, *takes the place of a wrongdoer* and *stands in no higher equity.* He, therefore, has no right to be informed that the suffering party has not abandoned his right." The circumstances in the case of Alexander and Kerr are in some respects like to those chiefly relied on here by the defendant, and the principles there laid down by the court are applicable here.

Judgment reversed, and a *venire de novo* awarded.

*Greenough*, for plaintiff in error.
*Cooper* and *Bellas*, contra.