## Cadwalader *versus* Tryon.

*Implied Warranty.— Warranties, general and special.—Damages for known Defects in Title.*

1. At common law there is no general warranty implied in the necessary words used to create a freehold.

2. An agreement for the sale of land in which the vendor covenants that upon the payment of the purchase-money he will " well and sufficiently grant, convey, and assure the said tract of land to the vendee, his heirs, and assigns," there is no general warranty of title, but only a special warranty against the grantor and his heirs.

3. If the vendee knows of a defect in the title to land which he is about to purchase, and does so without requiring a covenant against it, he cannot, in absence of fraud on the part of the vendor, withhold any portion of the purchase-money on account of this defect. The presumption is that he was compensated for this risk by the advantage of his bargain; but where such defect is unknown the rule is different.

ERROR to the Common Pleas of *Crawford county.*

This was a feigned issue to try whether the consideration of a judgment in the Common Pleas of Crawford county, to April Term 1849, No. 141, in favour of Thomas Cadwalader, against James Tryon, for $1834.50, had failed in whole or in part.

The case was this: On the 29th of February 1832, the plaintiff, who lived in New Jersey, by his agent, John Reynolds, contracted in writing with the defendant for the sale of a tract of land in the "seventh donation district," containing 500 acres and allowance, more or less, for $1250, payable in instalments.

On the 1st of August 1838, defendant gave plaintiff his judgment-bond in the penal sum of $1834.50, conditioned for the payment of $919.25 (which was entered to April Term 1849, No. 141). Payments to the amount of $660 were, from time to time, made on account, and to November Term 1855, No. 80, a *scire facias* was sued out to revive and continue the lien of this judgment. On the 17th of February 1857, defendant confessed judgment on the *sci. fa.*—the amount to be ascertained by the prothonotary—but reserving the right to apply to the court, by the next May Term, to open the original judgment, and be let into a defence of the same, in whole or in part. This application

[Cadwalader *v.* Tryon.]

was accordingly made and granted, and on an issue, properly framed, the parties went to trial. The plaintiff, having given in evidence the record of his judgment, rested.

The defendant then proved, in substance, the following facts:

The land sold, and for which the judgment had been given, was one of the eastern range of lots in that donation district, the eastern line of which district had never been run, and, though afterwards found by running from the western corner, the plane of this eastern line was undetermined and unknown to the plaintiff. It was described in the agreement as "a certain tract of land situate in Athens township, in the county of Crawford, being donation lot No. 137, of 500 acres and allowance, more or less."

One Daniel Carlin had settled on the tract east of this, and his improvement extended far enough west of the line afterwards found to take in ten acres of the plaintiff's land. At the time of the contract of the sale, Carlin was in actual possession of these ten acres, which were meadow: west of this improvement there were still 500 acres and allowance in the tract.

Tryon, after his purchase, cut part of this ten acre meadow, whereupon Carlin sued him in trespass, and recovered. Tryon then brought ejectment against Carlin for these ten acres, but Carlin was enabled to hold them under a title acquired by twenty-one years' possession. Of this ejectment it was said Reynolds had notice.

In the judgment Cadwalader had covenanted that, on payment of the purchase-money, he would "well and sufficiently grant, convey, and assure the said tract of land, with all and singular, to the said party of the second part, his heirs and assigns." The plaintiff (Cadwalader) did not know where the eastern line of the tract was, but the defendant, it seems, did. The loss of these ten acres was relied on by the defendant as entitling him to a deduction on his bond.

Exception was taken by the plaintiff to the answer of the court to the points presented by him, and, also, to portions of the general charge, as quoted in the assignments of error. The jury rendered their verdict in favour of the defendant, and, judgment having been entered thereon, the plaintiff sued out this writ, and assigned for error:

1st. That the court erred in charging the jury, "The words of the agreement are, 'will well and sufficiently grant, convey, and assure;' we think this amounts to a covenant to convey by deed of general warranty."

2d. That the court erred in their answer to plaintiff's sixth point, which was: "If the vendor sells a tract of land as wild and unimproved, and the vendee knows that the lines of the tract include an improvement made and held adversely by the owner

[Cadwalader *v.* Tryon.]

of the adjoining tract, he cannot recover or claim an allowance, if he fails to recover the improvement," by saying, "This would be the case if there was no covenant against the known defect (Lighty *v.* Shorb, 3 P. R. 447), but here, in our opinion, there was a covenant taken, and before payment there was an eviction or failure to recover in the ejectment, with notice to plaintiff's agent; which would entitle the defendant to retain the purchase-money sufficient to compensate him for the loss."

3d. The court erred in charging the jury, that "the defendant would be entitled to a deduction to the value which that piece bore in proportion to the value of the whole piece; not in proportion to the amount agreed for the whole piece, but proportionally to the value of the whole piece."

4th. The court erred in answer to plaintiff's fifth point, which was: "When parties are contracting for the sale of wild land, and an adjoining tract is settled and improved, the legal presumption is, that neither of the parties suppose that the lines of the tract selling embrace any portion of the improvement of the adjoining tract; and if the vendee afterwards discovers that said improvement is part of the tract purchased, he has no claim in law or equity if he fails in holding or recovering up to the line embracing such improvement," by saying, "Answered in the negative, if there be a covenant for a deed of general warranty, and, in our opinion, the words of the agreement comprehend such a covenant."

5th. The court erred in charging the jury, "The defendant, if the ejectment was brought on notice to Mr. Reynolds for part of the tract held adversely by Carlin, would also be entitled to a deduction for the fees paid counsel."

*D. M. Farrelly* and *T. R. Kennedy*, for plaintiff, contended:— 1. The words in the contract did not amount to a warrant to convey by deed with general warranty. The word "grant" implied a warranty as a consequence of feudal tenure, but the statute against subinfeudation abolished the warranty implied by this term: Butler's Notes 6, Appendix to Coke.

This word is used in all conveyances at present, and, if construed as defendant insists it should be, would often create a general warranty, where nothing of the kind is intended. The word "convey" does not amount to a general warranty; Dorsey *v.* Jackman, 1 S. & R. 42; nor does the word "assure" amount to a general warranty. It is not, as the court seemed to suppose, equivalent to the word "insure:" 2 Black. Com. 294; Shepherd's Touchstone 165.

There being no covenant of general warranty, the defendant was entitled to no deduction on his bond; for there was no covenant against a known defect, if the plaintiff's first proposition be

[Cadwalader v. Tryon.]

correct: Hart *v.* Porter, 5 S. & R. 205; Lighty *v.* Shorb, 3 P. Rep. 452.

2. Defendant knew there was an improvement on this property, while the plaintiff thought he was selling wild lands. A vendee may be entitled to retain any advantage gained by this knowledge, but he cannot compel the vendor to compensate him for their loss, without a covenant of general warranty.

3. The instruction embraced in the third assignment of error was wrong: 4 Casey 134.

4. The answer embraced in the fourth assignment of error was also wrong. The plaintiff put the case more favourably for the defendant than he was entitled to; for he knew the lines of the tract, while the plaintiff was ignorant of them. If neither knew that the lines included Carlin's ten acres, which defendant was afterwards deprived of by a title paramount, the defendant could not claim credit for the value of an improvement, when he had bargained for wild lands: King *v.* Pyle, 8 S. & R. 166; Forsyth *v.* Palmer, 2 Harris 97; Sugden on Vendors, cited in 7 Casey 23.

5. So also as to fees paid to counsel. If entitled to damages under a binding covenant, actual compensation is all he could claim.

*H. L. Richmond,* for defendant in error, presented no printed argument.

The opinion of the court was delivered, October 29th 1860, by THOMPSON, J.—The defendant in error, who was also the defendant below, claims a deduction from the purchase-money he had covenanted to pay to the plaintiff, for a certain lot or tract of donation land in Crawford county, on account of failure of title to a small portion of it.

The main matter to be determined here is the effect of the words of the agreement, whether they imply a covenant to convey by general or special warranty. They are, that upon payment of the purchase-money by the vendee, the vendor "will well and sufficiently grant, convey, and assure the said tract of land," to him, his heirs and assigns.

The learned judge of the Common Pleas thought, and so charged, that these words constituted a covenant for title with general warranty. This charge is the foundation for the first assignment of error.

The subject of ancient and modern warranties and how created, is learnedly and ably discussed by Kent, C. J., in Frost *et al. v.* Raymond, 2 Caines R. 188, and by Kennedy, J., in Whitehall *v.* Gotwalt, 3 Penn. 313, and they both arrive at the conclusion, that there is no general warranty implied at common law in the necessary words used in the creation of estates of freehold. The

1 WR.—21

[Cadwalader *v.* Tryon.]

same conclusion is announced as the result of all the authorities in Mr. Rawle's excellent work on Covenants for Title 476, *et passim*. Here, although the covenant was to convey a fee, the terms used imported nothing more. The grant of a fee does not necessarily imply a general warranty of title. It does, however, include a special warranty, that is to say, against the grantor and his heirs.

In Espy *v.* Anderson, 2 Harris 308, the words were, that the vendor would "well and sufficiently grant, convey, and assign," and they were held not to imply an agreement to convey by any other than a special warranty. In Withers *v.* Baird, 7 Watts 229, it was held that where there was an agreement to convey generally, the vendee had no right to expect more than a special warranty. The same doctrine is to be found in Rawle on Covenants 555. The words "grant, bargain, and sell" by statute, are made to imply a covenant that the vendor has not done or suffered any act whereby the estate granted by him may be defeated. This may be said to be the only implied covenant we have in conveyance of freehold estates. The learned judge was wrong therefore in charging as he did.

The application of this doctrine to the plaintiff's sixth point was erroneous. The point should have been affirmed generally. If the defendant knew of the defect of the plaintiff's title in the particular alleged and proved, before he bought, and required no covenant against it, and there was no fraud, he cannot detain any portion of the purchase-money : Lighty *v.* Shorb, 3 Penn. R. 452 ; Hart *v.* Porter, 5 S. & R. 205 ; Beedleman *v.* Folk, 5 Watts 308. And that he stipulated for no covenant against such a defect we have seen. When there is a known defect of title, and no covenant or fraud, the presumption is that the purchaser agreed to take the risk of the title on account of the advantages of the bargain : Rawle on Covenants 723. There is no difference as to this, whether the contract rests merely on articles of agreement, and therefore entirely executory, or on a deed without general warranty, where the purchase-money has not all been paid. A very different rule exists where the defects are unknown. There, wherever the purchase-money remains unpaid, if there be no covenant of warranty, the money may be retained. For the reasons given this case must be reversed.

From the defendant's own witnesses it seems to be proved that he knew of the defect before he bought. If so, this will be decisive of the case on another trial, and we need not notice the other points in it.

Judgment reversed, and *venire de novo* awarded.